UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE KAREN CHAPMAN | No. 2:16-cv-0212-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Julie Karen Chapman seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") determining that plaintiff did not continue to be disabled for purposes of receiving Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff's disability ceased as of April 1, 2012. (ECF No. 14.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 22.) No optional reply brief was filed, and the case was submitted for decision without oral argument on the record and written briefing.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 10, 11.)

1

For the reasons that follow, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

I.  BACKGROUND

Plaintiff was born on August 12, 1967, has completed one year of college, can communicate in English, and has not worked in the last 15 years. (Administrative Transcript ("AT") 23, 39, 330.)[2] In a previous decision dated April 10, 2009, plaintiff was found disabled as of October 1, 2008. (AT 9, 371.) However, on April 17, 2012, the Commissioner determined that plaintiff had medically improved and that her disability had ceased as of April 1, 2012. (AT 9, 137-40.) On March 5, 2013, that determination was upheld upon reconsideration after a hearing before a disability hearing officer. (AT 9, 143-45.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on July 18, 2014, and at which plaintiff, represented by an attorney, testified. (AT 9, 31-64.)[3]

In a decision dated September 26, 2014, the ALJ determined that plaintiff's disability had ceased as of April 1, 2012. (AT 9-24.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 8, 2015. (AT 1-4.) Plaintiff then filed this action in federal district court on February 3, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following two issues: (1) whether the ALJ improperly evaluated the medical opinion evidence; and (2) whether the ALJ erred in rendering his decision on an incomplete administrative record.

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff initially appeared before a different ALJ on November 20, 2013, but was granted a continuance to obtain counsel. (AT 65-73.)

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

"A Social Security disability benefits claimant is no longer entitled to benefits when substantial evidence demonstrates (1) there has been any medical improvement in the claimant's impairment and (2) the claimant is now able to engage in substantial gainful activity." Attmore v. Colvin, 827 F.3d 872, 873 (9th Cir. 2016) (citation and punctuation marks omitted). As the Ninth Circuit Court of Appeals explained:

> Medical improvement is defined as any decrease in the medical severity of a recipient's impairment, and requires a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s). The Commissioner's regulations prescribe a specific baseline for this comparison: an ALJ must compare the medical severity of the impairment(s) present at the time of the most recent favorable medical decision—that is, when the claimant was last found disabled or continued to be disabled—to the medical severity of that impairment(s) at the time of the comparison.
>
> Making this comparison is straightforward in ordinary termination cases where the ALJ finds a claimant is disabled (or continues to be disabled) in one decision and, in a later decision, finds the claimant has medically improved. In those cases, the most recent favorable medical decision is an earlier decision, and the severity of the claimant's impairment at the time of that decision provides the relevant baseline for comparison.

Attmore, 827 F.3d at 875-76 (citations and punctuation marks omitted).

In this case, the ALJ identified the most recent favorable medical decision, also known as the comparison point decision ("CPD"), as the April 10, 2009 decision, which found that plaintiff was disabled as of October 1, 2008. (AT 10.) At the time of the CPD, plaintiff suffered from the following medically determinable impairments: depression, anxiety, and history of polysubstance abuse in remission. (Id.) At that time, plaintiff's impairments were found to meet the A and B criteria of Listing 12.06 (related to anxiety and obsessive-compulsive disorders). (Id.)

In comparison, the ALJ found that, at the time of the alleged medical improvement on April 1, 2012, plaintiff no longer satisfied Listing 12.06 and had the residual functional capacity ("RFC") to perform "a wide range of work at all exertional levels, but the claimant is no more than frequently able to understand, remember, and carry out complex and detailed job instructions; the claimant can have no more than frequent face-to-face interaction with the general public, coworkers, and supervisors, although she can work in close proximity to others without difficulty. Moreover the claimant can no more than frequently deal with changes in the work environment or work setting." (AT 11, 14, 16, 18.) Based on plaintiff's age, education, work experience, and RFC, the ALJ concluded, in reliance on the Grids, that plaintiff had been able to perform a significant number of jobs in the national economy since April 1, 2012. (AT 23-24.) Consequently, the ALJ found that plaintiff's disability had ceased on April 1, 2012, and that she had not become disabled again since that date. (AT 24.)

As noted above, plaintiff contends that the ALJ erred by improperly evaluating the medical opinion evidence and rendering his decision on an incomplete administrative record. Each issue is addressed separately below.

Evaluation of the Medical Opinion Evidence

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion.

Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Plaintiff first contends that the ALJ improperly rejected the opinion of the consultative examining psychologist, Dr. Silvia Torrez, who reviewed plaintiff's records and personally evaluated plaintiff on March 18, 2012, less than a month prior to the date that plaintiff's disability was found to have ceased.  (AT 343-50.)  Dr. Torrez diagnosed plaintiff with a mood disorder not otherwise specified, an anxiety disorder not otherwise specified, nicotine dependence, amphetamine abuse in remission, and alcohol dependence in remission.  (AT 348.)  She opined that plaintiff was capable of managing her funds; had a good ability to understand and remember very short and simple instructions, understand and remember detailed instructions, maintain

---

[4] The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

5

concentration and attention, and sustain an ordinary routine without special supervision. Plaintiff also had a fair ability to accept instructions from a supervisor and respond appropriately, complete a normal workday and workweek without interruptions at a constant pace, interact with coworkers, and deal with various changes in the work setting. (AT 349-50.)

Plaintiff argues that the ALJ's RFC does not adequately account for the "fair" limitations assessed by Dr. Torrez, because "fair," as defined by the Wisconsin Department of Children and Families, is "one step above poor," or "seriously limited but not precluded." That argument lacks merit. As an initial matter, plaintiff cites no legal authority for the proposition that a definition employed by a Wisconsin state agency is binding on the Commissioner. Moreover, the ALJ's interpretation of Dr. Torrez's "fair" limitations is consistent with Dr. Torrez's opinion as a whole. In describing plaintiff's daily activities, Dr. Torrez noted:

> The claimant reports that she does all of the household chores. On a typical day, the claimant wakes up around 10:00 in the morning. She picks up and cleans around her house. She cooks and she cares for her dogs. She runs errands. She exercises. She watches television. She uses the computer. She reads. She listens to music. She goes for walks. She visits with her children and her father. She goes to bed around 10 p.m.

(AT 348.) In performing her examination, Dr. Torrez found that, although plaintiff's mood was anxious and she had difficulty with mathematical calculations, plaintiff was cooperative and pleasant, and had normal speech, a normal stream of mental activity, an appropriate thought content, average intellectual functioning, normal memory, a normal fund of knowledge, normal concentration, normal abstract thinking, an appropriate ability to differentiate, and normal judgment and insight. (AT 347-48.) After noting that plaintiff had not been participating in treatment for 1.5 years and was not taking medication, Dr. Torrez opined that plaintiff's "symptom severity is considered to be within the mild range" and that "[d]espite the claimant's reported symptoms and history, she does not appear to be suffering from a major mental disorder at this time. The claimant appears to be able to function adequately." (AT 349.) In light of those findings, the court defers to the ALJ's reasonable and rational interpretation of Dr. Torrez's opinion. Indeed, plaintiff's alternative interpretation, which posits that Dr. Torrez intended to suggest that plaintiff's abilities were seriously limited and "one step above poor," is implausible

1   when Dr. Torrez's opinion is considered globally.

2   Plaintiff next contends that the ALJ improperly rejected the opinions of state agency psychiatrists Drs. Garcia and Mateus. On April 2, 2012, Dr. Garcia reviewed plaintiff's records and opined that she was "[a]ble to perform simple, repetitive tasks. Able to maintain concentration, persistence and pace. Able to adapt to work changes and relate to supervisors, coworkers and the general public." (AT 353.) Subsequently, on October 10, 2012, Dr. Mateus reviewed plaintiff's records and opined that:

> Clt has sufficient retained understanding & memory to perform SRT [simple repetitive tasks]. Clt has adequate pace & persistence to sustain repetitive work tasks for a normal workday & workweek. Mood periodically affect [sic] her ability to complete a workweek without interruptions from psychological symptoms. Clt can relate in an appropriate socially effective manner w/ co-workers & supervisors, would do better with minimal contact with the public due to problem with her mood. Clt can adapt appropriately to a variety of work setting situations & changes.

(AT 410.)

As an initial matter, in declining to adopt the slightly more stringent limitations related to detailed tasks and public contact assessed by one or both of the state agency psychiatrists, the ALJ reasonably gave greater weight to the opinion of consultative examining psychologist Dr. Torrez, which was based on independent clinical findings made in the course of a personal examination. Holohan, 246 F.3d at 1202. Moreover, even assuming, without deciding, that the ALJ erred in failing to include such limitations in the RFC, the error was inconsequential to the ultimate non-disability determination. See Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (noting that a vocational expert is required only when there are "significant and sufficiently severe non-exertional limitations" not accounted for in the Grids); Angulo v. Colvin, 577 Fed. App'x 686, 687 (9th Cir. 2014) (unpublished) (noting that a claimant's postural and environmental limitations, as well as his restriction to nonpublic, simple, repetitive work, did not significantly limit his ability to do unskilled light or sedentary work). As such, any error in that regard was plainly harmless. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

////

7

Plaintiff also argues that the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Scott Howard. In a four-page check-the-box form dated June 26, 2014, Dr. Howard diagnosed plaintiff with recurrent major depression with a prognosis that "varies" and a GAF of 60 (indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning). He opined, *inter alia*, that plaintiff would be off task more than 30% of the workday, would only be 50% as efficient as the average worker, would be unable to complete a workday for about 2 days per month, would be absent from work 5 days or more per month, and could not obtain and retain work for six months, but could manage her own benefit payments. (See AT 485-88.) For the reasons discussed below, the ALJ provided several specific and legitimate reasons for discounting Dr. Howard's severe opinion.

As an initial matter, the ALJ rationally found that the record contains no credible evidence that Dr. Howard actually treated plaintiff. (AT 22.) The ALJ observed that, on the check-the-box form, Dr. Howard stated that he based his opinion on plaintiff's history and medical file, psychological evaluations and reports/opinions, and a personal interview, but not on any progress or office notes. (AT 22, 488.) Dr. Howard definitively claimed that plaintiff's impairments, symptoms, and limitations had lasted since the date that plaintiff claimed she could no longer work, but did not provide a specific date requested by the form. (AT 21, 485.) The ALJ also noted that plaintiff was unable to give much detail about her sessions with Dr. Howard. (AT 20.) At the July 18, 2014 hearing, plaintiff testified that she had seen Dr. Howard about 16-20 times, whereas Dr. Howard's June 26, 2014 form indicates that he had been seeing plaintiff on a monthly basis since April 8, 2014 (which suggests that plaintiff had seen Dr. Howard about 3 times by the time the form was completed and about 4 times by the time of the administrative hearing). (AT 20, 22, 59-60, 485.) However, the record surprisingly contains no treatment notes at all from Dr. Howard. As the ALJ noted:

> If there are treatment notes for 16 to 20 visits with a psychologist, whose opinion is central to the claim that the claimant's disability has not ceased, I would expect to see those records submitted with that opinion. Yet, at the hearing on July 18, 2014, the claimant's representative indicated there were no additional records to submit and the record was complete.

8

(AT 20; see also AT 34.)  Notably, despite the ALJ's explicit reference in the hearing decision to the absence of treatment notes by Dr. Howard, plaintiff, who remained represented by counsel, also curiously failed to submit any such records to the Appeals Council.

Additionally, the ALJ reasonably noted that Dr. Howard's opinion was internally inconsistent.  (AT 22.)  For example, despite assessing several marked limitations, Dr. Howard assigned a GAF score suggesting that plaintiff had only moderate symptoms or moderate difficulty in social, occupational, or school functioning.  (AT 22, 485-88.)  Furthermore, even though Dr. Howard opined that plaintiff could perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; and maintain attention and concentration for 90-95% of the workday, he also opined that plaintiff would be off task more than 30% of the workday.  (AT 486-87.)  Perhaps such inconsistencies could potentially be reconciled, but Dr. Howard's conclusory and minimally supported opinion contains no explanation for his assessments.

Furthermore, the ALJ found Dr. Howard's opinion inconsistent with the weight of the evidence in the record, including the less severe opinions of the consultative examining psychologist and the state agency psychiatrists.  The ALJ further pointed out that when plaintiff presented herself to San Joaquin County Behavioral Health Services for a crisis intervention on March 24, 2014, her mental status examination was essentially normal, and she was referred back to her primary care provider.  (AT 20, 490-94.)

Therefore, the ALJ properly discounted Dr. Howard's opinion.

In light of the above, the court finds no reversible error in the ALJ's evaluation of the medical opinion evidence.

<u>Adequacy of the Record</u>

Finally, plaintiff contends that the ALJ improperly rendered his decision on an incomplete administrative record.  Plaintiff reasons that, because the record does not contain a copy of the April 10, 2009 decision finding plaintiff disabled, or the prior medical evidence that supported the Commissioner's finding that plaintiff met Listing 12.06 at the time of the CPD, the ALJ could not have meaningfully compared the medical evidence from the CPD and the medical evidence from

the time that plaintiff's disability was found to have ceased to determine medical improvement. According to plaintiff, the ALJ should have developed the record to ensure that the prior records were included, and his failure to do so constitutes reversible error.  Under the circumstances of this case, that argument borders on the frivolous.

Neither plaintiff nor the Commissioner disputes that plaintiff was disabled until April 1, 2012, when her disability was deemed to have ceased.  Additionally, for the reasons discussed above, the medical opinion evidence, as properly weighed by the ALJ, supports the ALJ's finding that plaintiff was not disabled as of April 1, 2012.  As such, supplementation of the record with the prior evidence, and further review by the ALJ, could only produce two logical outcomes:

(1) The ALJ reviews the prior evidence and agrees with the Commissioner's prior disability determination; or

(2) The ALJ reviews the prior evidence and disagrees with the Commissioner's prior disability determination, potentially concluding that plaintiff should never have been awarded disability benefits in 2009.

However, neither potential outcome has any impact on the relevant period under review, which runs from April 1, 2012, through the ALJ's final decision.  As such, even assuming, without deciding, that the ALJ technically erred in failing to develop the record to include the prior evidence, that error was harmless and remand would be entirely futile.

V.   CONCLUSION

In sum, the court finds that ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.

2.   The Commissioner's cross-motion for summary judgment (ECF No. 22) is GRANTED.

3.   The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

////

////

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: January 27, 2017

_KENDALL J. NEWMAN_
UNITED STATES MAGISTRATE JUDGE